

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-6615
Re: Validity of H.B. 303, Regu-
lar Session, Forty-ninth
Legislature, concerning ap-
propriations for the State
Soil Conservation Board.

Your letter of May 24, 1945, requesting the opinion
of this department on the validity of House Bill 303 and re-
garding the effect of the Statute of Limitations upon the right
of the Legislature to appropriate, has been received. The
letter is set out in full as follows:

"The statute creating the State Soil Conserv-
ation Board sets out a per diem for members of the
Board and for supervisors at $4.00 per day. It al-
so specifically provides for five cents per mile
for traveling each way between the residence of
the supervisor and the designated business office
of the district supervisor.

"The Forty-eighth Legislature made appropria-
tions for both mileage and per diem for the Board
members, district supervisors and field represent-
atives. Under normal functions of the program, the
appropriations for such purposes for the present
biennium was exhausted. The Act making the appro-
priation for the above mileage and per diem also
carried the following provision:

"'The appropriations herein provided are to
be construed as the maximum sums to be appro-
priated to and for the several purposes named
herein, and the amounts are intended to cover
and shall cover the entire cost of the respec-
tive items and the same shall not be supplement-
ed from any other source; and, except as other

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

wise provided, no other expenditures shall be made, nor shall any other obligations be incurred by any department of this State, provided, however, that nothing herein shall prevent any department head from paying less than the maximum amounts set for any salaried position.'

"The Board members made no application to the Governor for a deficiency appropriation as provided for under Article 4351, R.C.S., and no such deficiency appropriation was granted.

"The Soil Conservation Board and representatives continued to function after the appropriations for mileage and per diem had been exhausted, and created claims for both mileage and per diem thereby, and have made application to the present Session of the Legislature for an appropriation for the payment of such claims.

"The present Legislature by House Bill No. 303 makes an appropriation for the State Soil Conservation Board to be used to pay the per diem and mileage of both the Board members and district supervisors of the above mentioned claims.

"The above mentioned bill carries both an emergency clause and a preamble. The first paragraph of the preamble reads as follows:

"WHEREAS, The State Soil Conservation Act provides that supervisors may receive compensation for services not to exceed Four Dollars ($4) for each day he shall be in attendance at the regular meetings of the Board of Supervisors, and five cents (5¢) per mile for travel each way between the residence of a supervisor and the designated business office of the district supervisors. Supervisors shall be paid quarterly for their services, and may not receive compensation and mileage for any number

of days in excess of five (5) in any three-months period; and'

"The question is raised in this department as to whether or not the appropriation made in the above mentioned House Bill No. 303 is valid for the following reasons, to wit:

"1. Is there sufficient pre-existing law to authorize the appropriation?

"2. If there is sufficient pre-existing law, then is the Legislature prohibited from making the appropriation by reason of the prohibition set out in the original appropriation made by the Forty-eighth Legislature for the payment of mileage and per diem?

"3. And for the further reason that the Soil Conservation Board failed to avail itself of the privilege of a deficiency appropriation grant under Article 4351.

"Can the Legislature make a valid appropriation based upon pre-existing law when there is a statute of limitation in existence (either general or special) against the payment of a claim, which claim is a valid claim, except for the Statute of Limitation? In other words, does the Statute of Limitation defeat pre-existing law in the rights of the Legislature to appropriate?

"In answer to the inquiry, I refer you to an opinion written July 28, 1933, addressed to the Hon. Moore Lynn, State Auditor and Efficiency Expert, by Assistant Attorney General Willis E. Gresham. Also Opinions Nos. O-2118 and O-4382."

The facts stated in your letter show that the Board made no application to the Governor for a deficiency appropriation; therefore, if the Legislature had authority to appropriate as in the instant case, it had such by virtue of pre-existing

Honorable George H. Sheppard, page 4


law as contemplated by Section 44, Article III of the Constitution of Texas, which provides, in part, as follows:

"The Legislature . . . shall not . . . grant by appropriations or otherwise, any amount of money out of the Treasury of the State to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law. . . ."

Article 165a-4, V.A.C.S., the "State Soil Conservation Law" created by Acts 1941, 47th Legislature, amending Acts 1939, 46th Legislature, provides, among other things, for the establishing of the Soil Conservation Board, outlines its duties, compensation, etc., directs the selection of supervisors, and sets out the compensation to be paid them, authorizes the employment of other agents and employees, and provides for the selection of the County Soil Conservation Committee.

The pertinent provisions of the statute are shown below:

Subsection B, Section 4, reads in part as follows:

"Members of a County Soil Conservation Committee shall receive no compensation for their services except the delegate to the District Conservation Convention who shall receive Five (5) Cents per mile for travel each way between the County Seat of his county and the place where the District Convention is held, and Four Dollars ($4) per day, not to exceed two (?) days, to be paid by the State Soil Conservation Board."

Subsection D, Section 4, reads in part as follows:

". . . Elective members of the Board may receive compensation for their services on the Board, not to exceed the sum of Ten Dollars ($10) per diem for each day of actual service rendered, but each member shall be entitled to expenses, including traveling expenses, necessarily incurred in the discharge of his duties as a member of the Board."

Honorable George H. Sheppard, page 5

Section 6 provides in part as follows:

". . . A supervisor may receive compensa-
tion for services not to exceed Four Dollars ($4)
for each day he shall be in attendance at the
regular meetings of the Board of Supervisors, and
Five (5) Cents per mile for travel each way be-
tween the residence of a supervisor and the desig-
nated business office of the district supervisors.
Supervisors shall be paid quarterly for their
services, and may not receive compensation and
mileage for any number of days in excess of five
(5) in any three-month period, except that one
member of each Board of Supervisors shall be en-
titled to receive Four Dollars ($4) per day not
to exceed two (?) days, and Five (5) Cents per
mile while attending an annual State-wide meeting
of supervisors to be held at a time and place to
be determined by the State Soil Conservation Board.
The provision providing Five (5) Cents per mile
for travel for district supervisors shall be in
effect September 1, 1941, and thereafter.

"The supervisors may employ such officers,
agents, and employees, permanent and temporary, as
they may require, and shall determine their quali-
fications, duties, and compensation. . . ."

Subsection H, Section 4, reads in part as follows:

"All moneys, funds, and securities coming
into the hands of the State Soil Conservation
Board shall be deposited in the State Treasury
and placed in the State Treasury to the credit of
a special fund to be known as the 'State Soil Con-
servation Fund'; and all such funds, moneys, and
securities hereafter deposited or credited to such
fund are hereby appropriated to the use and benefit
of the State Soil Conservation Board and may be, by
said Board, used in the administration of and in
compliance with this Act. . .."

Numerous opinions of the Supreme Court and the Courts of Civil Appeals discuss the effect of Article III, Section 44, of the Constitution; but we think it suffice to quote from the opinion of the Supreme Court in Ft. Worth Cavalry Club v. Sheppard, 83 S.W. (2d) 660, as follows:

"It is settled as the law of this state that under the provisions of section 44 of article 3 of our State Constitution, the Legislature is prohibited from appropriating state money to any 'individual' on any claim, unless, at the very time the appropriation is made, there is already in force some pre-existing valid law constituting the claim the appropriation is made to pay a legal and valid obligation against the state. . . . Finally, it is settled that by legal obligation is meant such an obligation as would form the basis of a judgment against the state in a court of competent jurisdiction, in the event the Legislature should permit it to be sued. Austin National Bank v. Sheppard (Tex. Com. App. opinion adopted by Supreme Court), 123 Tex. 272, 71 S.W. (2d) 242; Austin National Bank v. Sheppard (Tex. Com. App. opinion adopted by Supreme Court), 123 Tex. 280, 71 S.W. (2d) 246; Corsicana Cotton Mills v. Sheppard (Tex. Com. App. opinion adopted by Supreme Court), 123 Tex. 352, 71 S.W. (2d) 247; Nichols v. State, 11 Tex. Civ. App. 327, 32 S.W. 452 (writ refused); State v. Haldeman (Tex. Civ. App.) 163 S.W. 1020 (writ refused); State v. Wilson, 71 Tex. 291, 9 S.W. 155."

From a reading of the provisions of Article 165a-4, quoted above, it is to be noted that certain limitations are imposed, as for instance that applying to members of a County Soil Conservation Committee, found in Subsection B, Section 4 of the Article, wherein it is said, ". . . and Four Dollars ($4) per day not to exceed two (2) days. . .", and that portion of Section 6 relating to supervisors, which reads in part as follows:

". . . and may not receive compensation and mileage for any number of days in excess of five (5) in any three-month period, except that one member of each Board of Supervisors shall be entitled to receive Four Dollars ($4) per day not to exceed two (2) days, . . ."

With the specific limitations appearing in the pre-existing law, we must point out that any alleged claim which was created in contravention of the strict limitations would not be a claim based upon pre-existing law. However, it is to be observed that House Bill 303 quotes in its preamble a portion of Article 165a-4, containing a limitation clause; therefore, not having viewed a copy of the original claim, we must presume, for the purpose of this opinion, that the Legislature did not appropriate the sum provided in House Bill 303 to pay a claim founded upon expenditures made in excess of the strict prohibition of the statute.

We have carefully examined the foregoing authorities, and, in view of the interpretation placed upon Article III, Section 44, of the Constitution of Texas, are of the opinion that Article 165a-4 is a pre-existing law within the meaning of the constitutional provision, and that House Bill 303 constitutes a valid exercise of legislative authority.

The foregoing paragraph answers question No. 1 of your request; however, since there is no contravention of the Constitution in the legislative appropriation under consideration, your question No. 3 need not be discussed.

The limitation imposed by Paragraph b, Subsection (15), Section 2, General Provisions, page 1025, Acts 1943, 48th Legislature, is correctly quoted in your letter above, and will not be repeated.

It is to be observed that neither Section 2, the limitation provisions, nor the appropriation provision found at page 1013, Acts 1943, 48th Legislature, makes reference to Article 165a-4. Apparently there has been no attempt in this appropriation act to repeal or in any manner limit or destroy

the plain provisions of Article 165a-4. This department has repeatedly held that an act of appropriation cannot have the effect of repealing a general statute, and it has long hence ceased to be a debatable question that at a subsequent session of the Legislature it may modify or repeal acts of a prior Legislature.

The words used in the limitation section, lines two and three, "several purposes named herein," refer to the act in which such words appear, for there is no previous reference in the rider to any other enactment.

Specific act of the Legislature requires the officers, the Soil Conservation Board, to perform their duties. Article 165a-4 creates the legal obligation of the State to compensate for the duties performed and the specific expenditures authorized. The duty of maintaining and carrying on is imposed upon the Board by law and if the subsequent appropriation to provide for that legitimate and necessary purpose is insufficient, it is simply because such Legislature failed in its estimate of the amount required under the pre-existing general statute.

In our opinion No. 0-2118, directed to Governor O'Daniel, it was said:

"Every head of a department, and every manager of a State institution, perhaps without exception, is by law clothed with the power or duty of contracting (in the manner prescribed by law) for supplies, traveling expenses, and other things necessary to the proper administration of the departmental or institutional affairs. Every such purchase or expenditure by such person does legally create a debt against the State, not only to the extent of the specific appropriation therefor, but likewise to the further extent of any casual deficiency of revenue authorized by the Legislature for such purpose."

Although opinion No. 0-2118 was in response to an inquiry regarding the authority of the Governor to grant a deficiency appropriation, we think the quoted paragraph in point with the instant question.

In view of the above, it is the opinion of this department that the limitation provision contained in the rider of the appropriation Act of the 48th Legislature does not modify or limit the specific provisions of the General Statute, Article 165a-4, in such a manner as to destroy its effect as a pre-existing law. This is in answer to your question No. 2.

Your last question, relating to the effect of a statute of limitation upon the authority of the Legislature to appropriate to pay a claim arising under a pre-existing law, is too general to permit a direct opinion of this department. However, in your supplemental request, of June 23, 1945, you presented a particular case under a specific statute and your question was answered in our Opinion No. O-6363, approved July 9, 1945. Since your supplemental request apparently withdraws the general question in your first letter, we are not discussing it here.

Trusting that this opinion considered together with Opinion No. O-6363 satisfactorily answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Harris Toler
Assistant

HT:db

